IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DEMETRIUS ANTWAN BIRT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 112-048 |
| | ) | |
| SHELIA OUBRE, Warden,[1] and SAMUEL S. OLENS, Attorney General of the State of Georgia, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner brought the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is currently before the Court on Attorney General Olens's motion to be dismissed as an improper party respondent (doc. no. 9) and Respondent Oubre's motion to dismiss the petition as untimely (doc. no. 8). Petitioner opposes Respondent Oubre's motion. (Doc. nos. 12, 13.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Attorney General Olens's motion to be dismissed as an improper party respondent be **GRANTED** (doc. no. 9), that Attorney General Olens be **DISMISSED** from this case, that Respondent Oubre's motion to dismiss be **GRANTED** (doc. no. 8), and

---

[1] Petitioner was incarcerated at Valdosta State Prison when he filed the instant § 2254 petition (see doc. no. 1, p. 1), but has since been transferred to Baldwin State Prison (see doc. no. 4). As explained in greater detail infra, see Part II.A., the proper respondent in this case is the warden at Petitioner's current place of confinement, Shelia Oubre. See Rule 2(a) of the Rules Governing Section 2254 Cases. The **CLERK** is **DIRECTED** to substitute Shelia Oubre for William Danforth as a Respondent in this case. The **CLERK** is also **DIRECTED** to modify the docket to reflect that Petitioner is incarcerated at Baldwin State Prison, P.O. Box 218, Hardwick, Georgia 31034, rather than Bostick State Prison. (See doc. no. 4.)

that this petition be **DISMISSED**, and that a final judgment be **ENTERED** in favor of Respondent Oubre.

## I. BACKGROUND

On April 19, 2002, a Jefferson County jury found Petitioner guilty of aggravated assault and criminal damage to property. (Doc. no. 1, p. 3; doc. no. 10-3, p. 1 n.1.) Petitioner was sentenced to 30 years of incarceration. (Doc. no. 1, p. 3.) Petitioner subsequently filed a motion for a new trial, which was denied. (Id.; doc. no. 10-1, p. 1.) Petitioner then filed a direct appeal, and the Georgia Court of Appeals affirmed his convictions on April 13, 2007. Birt v. State, 645 S.E.2d 596 (Ga. Ct. App. 2007). Petitioner did not apply for a writ of certiorari from the Georgia Supreme Court.

On September 3, 2008, Petitioner filed a *pro se* state habeas corpus petition in the Superior Court of Gwinnett County – which was received for filing on September 18, 2008 – in which he raised four claims, including "ineffective assistance of judge," two counts of bias of tribunal, and a due process claim. (Doc. no. 1, p. 4; doc. no. 10-2.) Following an evidentiary hearing which was held on December 18, 2008, where Petitioner represented himself, the state habeas court denied these claims in an Order dated April 21, 2010. (Doc. nos. 10-3, 10-4.)

Petitioner executed the instant § 2254 petition on March 30, 2012. (Doc. no. 1.) Petitioner claims "ineffective assistance of judge," bias of tribunal, "failure to follow due process and Equal Protection Clause," and ineffective assistance of counsel. (See id. at 6.) Attorney General Olens contends that he is an improper party respondent in this case. (See doc. no. 9.) Furthermore, Respondent Oubre argues that the petition should be dismissed as

time-barred under 28 U.S.C. § 2244(d). (See doc. no. 8.) Petitioner disagrees, arguing that the circumstances of his case warrant tolling the statue of limitations. (See doc. nos. 12, 13.) The Court resolves the dispute as follows.

## II. DISCUSSION

### A. Attorney General Olens Is Not a Proper Respondent

The Court will first address Attorney General Olens's motion to be dismissed as an improper party respondent. (Doc. no. 9.) Pursuant to 28 U.S.C. § 2242, an application for a writ of habeas corpus shall allege the name of the person having custody over a petitioner. Furthermore, Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that for habeas petitioners who are currently in the custody of the state, "the petition must name as respondent the state officer who has custody." The Advisory Committee Notes to Rule 2 explain that the state officer having custody of the petitioner, often a prison warden, is the appropriate respondent when a petitioner is seeking relief from a sentence for which he is currently incarcerated. The Notes further explain that the state attorney general is an appropriate party respondent when the petitioner is attacking a sentence which will be carried out in the future or for which the petitioner is not incarcerated, on probation, or on parole. As another federal court has explained, "[T]he only proper respondent in a collateral attack is the petitioner's custodian. . . . If the petitioner is in prison, the warden is the right respondent. . . . A state's attorney general is a proper party only if the petitioner is not then confined, but expects to be taken into custody." Hogan v. Hanks, 97 F.3d 189, 190 (7th Cir. 1996).

As Petitioner is challenging the sentence for which he is currently incarcerated,

Warden Oubre is the only proper Respondent. Attorney General Olens's motion should therefore be **GRANTED**, and he should be dismissed from this case. (Doc. no. 9.)

### B. The Instant Petition Should Be Dismissed as Time-Barred

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts. In pertinent part, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

#### 1. Finality of Petitioner's Conviction

As Petitioner has outlined no reason to suppose that §§ 2244(d)(1)(B), (C), or (D) apply to the instant case, the instant case is governed by § 2244(d)(1)(A). Under 28 U.S.C. § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the

4

expiration of the time for seeking such review." Petitioner filed a direct appeal, and the Georgia Court of Appeals affirmed Petitioner's convictions on April 13, 2007. Petitioner did not file a motion for reconsideration or appeal his case to the Georgia Supreme Court. Thus, his conviction became "final" when the 10-day time period for indicating intent to seek review in the Georgia Supreme Court expired. See Pugh v. Smith, 465 F.3d 1295, 1299 (11th Cir. 2006); see also Ga. Sup. Ct. R. 38(1) (providing that party seeking review in Georgia Supreme Court must file notice of intention to apply for certiorari within 10 days after entry of judgment by lower court). In the instant case, the AEDPA statute of limitations therefore began to run 10 days following the Georgia Court of Appeals' affirmance of Petitioner's convictions on April 13, 2007. Thus, for the purpose of determining the timeliness of the above-captioned petition, Petitioner's convictions became final on April 23, 2007.

### 2. Application of the Statute of Limitations

As noted above, under the AEDPA, Petitioner had one year from April 23, 2007 to file his federal habeas corpus petition. However, the Court recognizes that according to the provisions of 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction or other collateral review is pending in state court. Jones v. Nagle, 349 F.3d 1305, 1307 (11th Cir. 2003). Here, Petitioner waited more than one year after his convictions became final before filing his state habeas petition on September 3, 2008. (See doc. no. 10-2, p. 5.) Therefore, by the time Petitioner filed his state habeas petition, the one-year statue of limitations for filing a federal petition had expired, meaning that no time period remained to be tolled. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) ("Once a deadline has expired, there is nothing left to toll. A

state court filing after the federal habeas filing deadline does not revive it.") (citing Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003)).

The AEDPA describes three other situations which may delay or reset its one-year statute of limitations: (1) where there is a newly discovered factual predicate for a petitioner's claim which could not have been discovered earlier through the exercise of due diligence; (2) where the State has created some "impediment" to filing the application; or (3) where the petitioner asserts a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. §§ 2244(d)(1)(B) – (D) (quoted supra). As explained above, Petitioner has not provided any explanation that would delay or reset his one-year statute of limitations. Thus, the Court concludes that there is no basis for statutory tolling of the AEDPA's one-year statute of limitations.

### 3. Equitable Tolling and Actual Innocence

Petitioner argues that he should receive the benefit of equitable tolling because he "only recently became lucid" (doc. no. 12, p. 1) and because he has a "mental illness in which he has very brief periods of organized and rational thought" (doc. no. 13, p. 1).[2] Petitioner also provides a two-page document entitled "Mental Status Exam," dated June 12, 2001 and signed by Kenneth J. Marks, M.D., which states that Petitioner, at that time, had "[s]chizophrenia, chronic paranoid type" and "[a]ntisocial personality disorder." (See doc. no. 13-1.)

Equitable tolling can be applied to prevent the application of the AEDPA's statutory

---

[2] The Court notes that Petitioner actually cites O.C.G.A. § 9-3-90 (see doc. no. 13, p. 1), which provides for tolling of the limitations period prescribed by Georgia law for civil actions for people who are "legally incompetent because of mental retardation or mental illness." O.C.G.A. § 9-3-90.

6

deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. ___, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling, and conclusory allegations are insufficient to carry that burden. San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011). Finally, a petitioner will not prevail based upon a showing of either extraordinary circumstances or diligence alone; he must establish both. Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir. 2006) (citing Pace, 544 U.S. at 418-19).

The mere contention that a petitioner suffers from mental incapacity "without more," however, "is insufficient to justify equitable tolling." Lawrence v. Florida, 421 F.3d 1221, 1227 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007). Rather, the petitioner must "establish a causal connection between his alleged mental incapacity and his ability to file a timely petition." Id. at 1226-27 (petitioner failed to allege causal connection between low IQ and mental impairments he had suffered "his entire life" and his failure to file timely petition); cf. Hunter v. Farrell, 587 F.3d 1304, 1309 (11th Cir. 2009) (*per curiam*) (petitioner raised sufficient factual issue about whether there was a causal connection between his mental incapacity and his ability to file a timely petition where he not only presented a competency report showing he had "significant and irreversible" mental retardation which "remain[ed] probative . . . during the limitations period and beyond," but also alleged he was "unable to

7

'manage his affairs or understand his legal rights and act upon them,'" and all of his post-conviction petitions, including his § 2254 petition, were filed with the help of others).

Regardless of whether he has shown the aforementioned causal connection, however, a petitioner who alleges a mental impairment must still also show that he pursued his rights diligently. See Doe v. United States, 469 F. App'x 798, 800-01 (11th Cir. 2012) (*per curiam*) (petitioner failed to explain how low IQ "prevented him from exercising due diligence"). While a mental impairment may "yield a very low bar for what level of diligence is reasonable," a petitioner "still bears the burden of showing he did something" in pursuit of his rights. Myers v. Allen, 420 F. App'x 924, 927-28 (11th Cir. 2011) (*per curiam*), *cert. denied*, 132 S. Ct. 2771 (2012); see also Murphy v. Hall, CV 109-043, 2009 WL 1579494, at *1 (S.D. Ga. June 4, 2009) (petitioner who presented documentation showing he had been diagnosed with schizoaffective disorder failed to show due diligence because he "provided no details of his efforts to obtain relief, except to state that he has been 'diligent in filing petitions in state and federal court[.]'").

Here, Petitioner has failed to carry his burden of showing that he is entitled to equitable tolling. Petitioner states that he "only recently became lucid" (doc. no. 12, p. 1), and he presents a "Mental Status Exam" showing that he was diagnosed with paranoid schizophrenia and antisocial personality disorder in June 2001 (doc. no. 13-1). Notably, however, Petitioner testified about his mental health during his state habeas corpus evidentiary hearing, specifically that he had been diagnosed as having paranoid schizophrenia both before his trial and before he was sentenced, but that "[i]t was not [his] diagnosis." (See doc. no. 10-4, pp. 4-9.) Rather, Petitioner contended that he actually suffered from "schizo-

affective disorder, bipolar-type." (Id.) Petitioner also admitted at the hearing, however, that he had no evidence that "schizo-affective disorder, bipolar-type" was the proper diagnosis, or that he had been "mis-diagnosed" before his trial or sentencing. (Id. at 8-9.) Now, in response to Respondent Oubre's motion to dismiss, Petitioner presents his June 2001 diagnosis of "schizophrenia, chronic paranoid type" (see doc. no. 13-1), presumably as evidence in support of his claim that he "has very brief periods of organized and rational thought" (see doc. no. 13, p. 1). Yet, according to Petitioner's own testimony at his state habeas corpus hearing, that was not the proper diagnosis, meaning that Petitioner himself previously discredited the only objective evidence he now presents about his alleged mental impairment.

Setting that issue aside, however, Petitioner also fails to show a causal connection between his alleged impairment and his ability to file a timely petition. Petitioner does not indicate whether or the extent to which the impairment actually affected him during the time in which the limitations period was running – from May 2007 through May 2008 – or how it prevented him from filing a state habeas corpus petition during that time.[3] Petitioner's failure to so indicate is particularly problematic because the record shows that in September 2008, he filed a *pro se* state habeas petition (doc. no. 10-2), and that he represented himself

---

[3] The Court also notes that according to the report Petitioner submitted, his conditions were expected to be treatable with therapy and medication. (See doc. no. 13-1, p. 2.) To that end, Petitioner testified at his state habeas corpus hearing that he was taking medication for his impairment, but that he stopped taking it shortly before his trial. (See doc. no. 10-4, p. 5.) Thus, the instant case is distinguishable from Hunter, where Petitioner at least raised a sufficient factual issue about whether a causal connection existed, because the medical report the petitioner submitted in that case showed that his mental retardation was "significant and irreversible," and thus remained probative of the petitioner's impairment "during the limitations period and beyond[.]") See Hunter, 587 F.3d at 1309.

at the evidentiary hearing held on his state habeas petition on December 18, 2008 (doc. no. 10-4). See Fox v. McNeil, 373 F. App'x 32, 34 (11th Cir. 2010) (*per curiam*), *cert. denied*, 131 S. Ct. 1047 (2011) (noting that petitioner failed to establish causal connection between alleged mental incompetence and ability to file timely petition, in part, because he was "able to file several *pro se* motions in state court for post-conviction relief"); cf. Hunter, 587 F.3d at 1309 (petitioner's claim of ongoing mental incapacity corroborated by fact that all of his post-conviction petitions were filed with the help of others). Accordingly, Petitioner has not established a causal connection between his alleged mental incapacity and his ability to file a timely § 2254 petition. See Lawrence, 421 F.3d at 1227.

Still, even if Petitioner had established a causal connection between his mental impairment and his failure to file a timely petition, he still fails to show that he diligently pursued his rights while the limitations period was running. Indeed, Petitioner has "provided no details of his efforts to obtain relief," Murphy, 2009 WL 1579494, at *1, during the time before his state habeas petition was filed. In the absence of any such details, Petitioner has plainly not demonstrated that he pursued his rights diligently. See Myers, 420 F. App'x at 927-28. Thus, the Court concludes that Petitioner has failed to show that equitable tolling is justified in this instance.

Finally, the Court notes that consideration of an otherwise untimely petition for federal habeas relief may be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has resulted in the conviction of someone who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1985); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual

innocence exception "is exceedingly narrow in scope," and a petitioner seeking to invoke it must "show that it is more likely than not that no reasonable juror would have convicted him." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Id. (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)).

Here, Petitioner has not presented any new evidence to suggest that he did not commit the offenses of which he was found guilty such that no reasonable juror would have convicted him. Accordingly, the actual innocence exception does not save the instant petition from being time-barred under the AEDPA.

In sum, because (1) the above-captioned petition was filed more than one year after Petitioner's conviction became final, (2) Petitioner has not pointed to any other valid statutory ground for extending the deadline for filing his federal petition, and (3) Petitioner has not satisfied the requirements for equitable tolling or presented any arguments sufficient to support a claim of actual innocence, Petitioner's § 2254 petition is time-barred by the AEDPA's one-year statute of limitations. Accordingly, Respondent Oubre's motion to dismiss should be **GRANTED**. (Doc. no. 8.)

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Attorney General Olens's motion to be dismissed as an improper party respondent be **GRANTED** (doc. no. 9), that Attorney General Olens be **DISMISSED** from this case, that Respondent Oubre's motion to dismiss be **GRANTED** (doc. no. 8), and that this petition be

**DISMISSED**, and that a final judgment be **ENTERED** in favor of Respondent Oubre.[4]

SO REPORTED and RECOMMENDED this 4th day of January, 2013, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court is aware that in Petitioner's second reply to Respondent Oubre's motion to dismiss, he states that he is "reiterating [the] need for appointment of counsel." (Doc. no. 13, p. 1.) As the Court previously explained to Petitioner, however, there is no right to appointed counsel in a habeas corpus action in federal court. (See doc. no. 11.) Under 28 U.S.C. § 2254(h), the Court has authority to appoint counsel in habeas corpus proceedings brought pursuant to 28 U.S.C. § 2254. However, such requests are discretionary with the courts, and appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]" Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992) (quoting Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987)). Moreover, "[i]n a habeas corpus action in federal court[,] there is no requirement that counsel be appointed unless appointment of counsel is necessary to due process." Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979) (citations omitted). In sum, "[i]t is well established that indigents applying for federal or state postconviction relief, even those sentenced to death, have no federal constitutional right to counsel except in those rare cases where under the circumstances the fundamental fairness component of due process requires appointment of counsel." Donald E. Wilkes, Jr., Federal Postconviction Remedies and Relief § 2.2, at 129 (2012 ed.).

Here, while Petitioner has asserted that he has mental health issues, he has shown himself capable of communicating with the Court and filing motions on his own behalf. Thus, Petitioner has not shown that his mental health issues prevent him from "presenting the essential merits of his . . . position," which is a key consideration in determining whether the appointment of counsel is justified. Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993). Moreover, the Court has recommended that the instant § 2254 petition be dismissed, as discussed supra. Accordingly, to the extent Petitioner is again requesting appointment of counsel, his request is denied.